IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

TERESA ROLLINS                                                    PLAINTIFF

vs.                          Civil No. 4:15-cv-04097-BAB

NANCY A. BERRYHILL                                               DEFENDANT
Acting Commissioner, Social Security Administration[1]

### MEMORANDUM OPINION

Teresa Rollins ("Plaintiff") brings this action under 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI") benefits under Titles II and XVI of the Social Security Act ("The Act").

The Parties have consented to the jurisdiction of a magistrate judge to conduct any and all proceedings in this case, including conducting the trial, ordering the entry of a final judgment, and conducting all post-judgment proceedings. (ECF No. 5).[2] Pursuant to this authority, the Court issues this memorandum opinion and orders the entry of a final judgment in this matter.

1.   **Background:**

Plaintiff protectively filed her applications for DIB and SSI on March 12, 2010.  (ECF No. 15, p. 316).  In her applications, Plaintiff alleges being disabled due to diabetes, seizures, a heart

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] The docket numbers for this case are referenced by the designation "ECF No. ___." The transcript pages for this case are referenced by the designation "ECF No. ___, p. ___."

1

condition, high blood pressure, and acid reflux.  (ECF No. 15, p. 273).  Plaintiff alleges an onset date of December 26, 2009.  (ECF No. 15, p. 315).  These applications were denied initially and again upon reconsideration.  (ECF No. 15, pp. 123-129).

Thereafter, Plaintiff requested an administrative hearing on her denied applications, and this hearing request was granted.  (ECF No. 15, p. 149).  Plaintiff's first administrative hearing was held on May 13, 2011, in Arkansas before Administrative Law Judge ("ALJ") Walter Orr.  (ECF No. 15, pp. 45-62).  Plaintiff, who appeared without the assistance of an attorney or other counsel, and Vocational Expert ("VE") Julia Crume testified at this hearing.  *Id.*  After this hearing, on July 6, 2011, the ALJ entered an unfavorable decision denying Plaintiff's applications for DIB and SSI. (ECF No. 15, pp. 102-14).  The Appeals Council remanded the case to the ALJ on October 28, 2011, for further consideration of Plaintiff's RFC and evaluation of the opinions of consultative examiners Dr. Cathy Word and Julia Wood.  (ECF No. 15, pp. 120-22).  Plaintiff's second administrative hearing was held on January 18, 2012, in Arkansas before ALJ Walter Orr.  (ECF No. 15, pp. 63-97). Plaintiff, who appeared without the assistance of an attorney or other counsel, VE Russell Bowden, and psychological expert Betty Feir testified at this hearing.  *Id.*  After this hearing, on April 11, 2012, the ALJ entered an unfavorable decision denying Plaintiff's applications for DIB And SSI. (ECF No. 15, pp. 18-38).  Plaintiff thereafter requested review by the Appeals Council, who denied this request on August 6, 2012.  (ECF No. 15, pp. 10-13).

Plaintiff subsequently filed an appeal with this Court.  *Rollins v. Colvin*, No. 4:12-cv-04099, 2013 WL 3897771 (W.D. Ark. 2013). The April 11, 2012, decision of the ALJ was reversed and remanded for failure to properly analyze Plaintiff's subjective complaints in accordance with the requirements of *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984).  *Id.*  Plaintiff's third

2

administrative hearing was held on October 9, 2014, in Dallas North, Texas before ALJ Michael Finnie.  (ECF No. 15, pp. 829-61).  Plaintiff was present and was represented by Greg Jones.  *Id.*  Plaintiff and VE Susan Dobson testified at this hearing.  *Id.*  At the time of this hearing, Plaintiff was forty years old, which is defined as a "younger person" under 20 C.F.R. § 404.1563(c); 20 C.F.R. § 416.963(c).  (ECF No. 15, p. 833).  As for her level of education, Plaintiff completed the twelfth grade.  *Id.*

After this hearing, on April 24, 2015, the ALJ entered an unfavorable decision denying Plaintiff's applications for DIB and SSI.  (ECF No. 15, pp. 770-86).  In this decision, the ALJ found Plaintiff met the insured status requirements of the Act through March 31, 2014.  (ECF No. 15, p. 775, Finding 1).  The ALJ found Plaintiff had not engaged in Substantial Gainful Activity ("SGA") since December 26, 2009, her alleged onset date.  (ECF No. 15, pp. 775-76, Finding 2).  The ALJ determined Plaintiff had the following severe impairments: seizure disorder, headache, diabetes with neuropathy, irritable bowel syndrome, gastric esophageal reflux disease, hypertension, obstructive sleep apnea, obesity, degenerative joint disease of the left knee, affective disorder, generalized anxiety disorder, personality disorder, and post-traumatic stress disorder ("PTSD").  (ECF No. 15, p. 776, Finding 3).  Despite being severe, the ALJ determined these impairments did not meet or medically equal the requirements of any of the Listings of Impairments in Appendix 1 to Subpart P of Part 404 ("Listings").  (ECF No. 15, pp. 776-77, Finding 4).

The ALJ then considered Plaintiff's Residual Functional Capacity ("RFC").  (ECF No. 15, pp. 777-84, Finding 5).  First, the ALJ evaluated Plaintiff's subjective complaints and found her claimed limitations were not entirely credible.  *Id.*  Second, the ALJ determined Plaintiff retained the RFC to perform:

a full range of light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except that she can lift and/or carry 20 pounds occasionally, lift and/or carry 10 pounds frequently, stand/walk for 6 hours in an 8-hour workday, and sit for 6 hours in an 8-hour workday. The claimant must avoid exposure to hazardous moving machinery, unprotected heights and commercial driving. The claimant has the ability to understand, carry out and remember simple, routine tasks, with no more than occasional contact with the general public.

*Id.*

The ALJ then determined Plaintiff was unable to perform any of her Past Relevant Work ("PRW"). (ECF No. 15, p. 784, Finding 6). The VE testified at the administrative hearing regarding this issue. (ECF No. 15, pp. 854-60). Based on Plaintiff's age, education, work experience, and RFC, the ALJ determined there were jobs existing in significant numbers in the national economy Plaintiff could perform, such as a silver wrapper, which has a DOT code of 318.687-018, with approximately one hundred seven thousand (107,000) jobs in the national economy, and approximately three hundred (300) jobs in the state of Arkansas, as a cleaner, which has a DOT code of 323.687-014, with approximately one hundred thirty-four thousand (134,000) jobs in the national economy, and approximately two thousand two hundred (2,200) jobs in the state of Arkansas, and as a locker room attendant, which has a DOT code of 358.677-014, with approximately eighteen thousand (18,000) jobs in the national economy, and approximately two hundred (200) jobs in the state of Arkansas. (ECF No. 15, pp. 784-85, Finding 10). Because jobs exist in significant numbers in the national economy which Plaintiff can perform, the ALJ also determined Plaintiff had not been under a disability, as defined by the Act, from December 26, 2009, through April 24, 2015, the date of the ALJ's decision. (ECF No. 15, p. 785), Finding 11).

Thereafter, on May 4, 2015, Plaintiff requested a review by the Appeals Council. (ECF No. 15, p. 799). The Appeals Council denied this request on August 19, 2015. (ECF No. 15, pp. 765-

69).  On September 28, 2015, Plaintiff filed the present appeal with this Court.  (ECF No. 1).  The Parties consented to the jurisdiction of this Court on September 28, 2015.  (ECF No. 5).  This case is now ready for decision.

2.    **Applicable Law:**

In reviewing this case, this Court is required to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  *see* 42 U.S.C. § 405(g) (2006); *Ramirez v. Barnhart,* 292 F.3d 576, 583 (8th Cir. 2002).  Substantial evidence is less than a preponderance of the evidence, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision.  *see Johnson v. Apfel,* 240 F.3d 1145, 1147 (8th Cir. 2001).

As long as there is substantial evidence in the record to support the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome or because the Court would have decided the case differently.  *see Haley v. Massanari,* 258 F.3d 742, 747 (8th Cir. 2001).  If, after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed.  *see Young v. Apfel,* 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his or her disability by establishing a physical or mental disability that lasted at least one year and that prevents him or her from engaging in any substantial gainful activity.  *see Cox v. Apfel*, 160 F.3d 1203, 1206 (8th Cir. 1998); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The Act defines a "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and

laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).  A plaintiff must show

his or her disability, not simply his or her impairment, has lasted for at least twelve consecutive

months.  *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A).

To determine whether the adult claimant suffers from a disability, the Commissioner uses

the familiar five-step sequential evaluation.  He determines: (1) whether the claimant is presently

engaged in a "substantial gainful activity"; (2) whether the claimant has a severe impairment that

significantly limits the claimant's physical or mental ability to perform basic work activities; (3)

whether the claimant has an impairment that meets or equals a presumptively disabling impairment

listed in the regulations (if so, the claimant is disabled without regard to age, education, and work

experience); (4) whether the claimant has the Residual Functional Capacity ("RFC") to perform his

or her past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to

the Commissioner to prove there are other jobs in the national economy the claimant can perform.

*see Cox,* 160 F.3d at 1206;  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  The fact finder only

considers the plaintiff's age, education, and work experience in light of his or her RFC if the final

stage of this analysis is reached.  *see* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

**3.    Discussion:**

In her appeal brief, Plaintiff raises three arguments for reversal: (1) the ALJ failed to consider

Plaintiff's impairments in combination with regard to Listings 3.10, 9.00, 11.03, 11.04B, 12.02,

12.04, and 12.06; (2) the ALJ erred in discrediting the opinions of Dr. Goins and Dr. Parker, and ;

(3) the ALJ erred in discrediting Plaintiff by concluding Plaintiff retained the RFC to perform a

limited range of light work.  (ECF No. 12).  Upon review of these claims, this Court agrees with

Plaintiff's second argument generally and finds the ALJ erred in his evaluation of the opinion

evidence in the record.  Accordingly, this Court will only address this argument for reversal.

Generally, a treating physician's opinion is given more weight than other sources in a disability proceeding.  20 C.F.R. § 404.1527(c)(2).  Indeed, when the treating physician's opinion is supported by proper medical testing, and is not inconsistent with other substantial evidence in the record, the ALJ must give the opinion controlling weight.  *Id.*  "However, [a]n ALJ may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions."  *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) (alteration in original) (internal quotation omitted).  Ultimately, the ALJ must "give good reasons" to explain the weight given the treating physician's opinion.  20 C.F.R. § 404.1527(c)(2).

The ALJ discounted the opinion of one of Plaintiff's treating physicians, Dr. Parker, for the following reasons:

> Dr. Parker failed to provide objective clinical or laboratory diagnostic findings that support his assessment that [Plaintiff] can only perform less than sedentary exertional activities, or would miss more than 3 workdays per month.

(ECF No. 15, p. 784).  The form on which Dr. Parker provided his opinion did not prompt Dr. Parker to provide any additional clinical or laboratory diagnostic information with his opinion, only that he base his opinion, "on your examination and the medical records you considered."  (ECF No. 15, pp. 1314-17).  Dr. Parker ordered an MRI of Plaintiff's left knee on April 25, 2013. (ECF No. 15, p. 1353). The May 7, 2013, MRI revealed "abnormal appearance of the ACL with enlargement and increased T2 signal," and indicated "findings may relate to advanced mucoid degeneration," and "ACL tear with secondary to occult injury is not entirely excluded," as well as small joint effusion.

(ECF No. 15, p. 1307).  Dr. Parker reviewed the MRI findings with Plaintiff the following day, on May 8, 2013, and referred her to Baptist Health Surgical and Orthopedic Clinic.  (ECF No. 15, p. 1349).  At Plaintiff's orthopedic appointment on May 20, 2013, Dr. McLeod noted active painful range of motion of Plaintiff's left knee and noted her left knee flexion was only seventy degrees. (ECF No. 15, p. 1292).  The ALJ, however, determined "there are no treatment notes or reports of medical sources to document any significantly decreased range of motion of her knee. . . ."  (ECF No. 15, p. 782). The ALJ, moreover, determined at step two of the sequential evaluation process that Plaintiff's degenerative joint disease of the left knee was a severe impairment.  (ECF No. 15, p. 776). When the ALJ broadly states that objective evidence does not exist, but can be found upon review, this Court is unconvinced the ALJ carried out his duty to base his RFC determination on all relevant evidence in the record.

The ALJ's decision contains other instances where evidence in the record as a whole is simply not acknowledged and examined.  For example, the ALJ stated in his decision, "[Plaintiff] underwent an EGD and stomach biopsy that revealed normal mucosa."  (ECF No. 15, pp. 779, 782). Upon review of the evidence, one biopsy was "positive for numerous identifiable H. Pylori-like organisms," and another was "positive for focal intestinal-type metaplasia." The ALJ did not elaborate further on Plaintiff's abdominal or gastrointestinal symptoms elsewhere in his decision, except to remark that "no treating physical has considered the [IBS] or [GERD] symptoms to be significant enough to warrant further diagnostic medical tests," but nevertheless identified Plaintiff's irritable bowel syndrome and gastric esophageal reflux disease as severe impairments at step two of the sequential evaluation process.  (ECF No. 15, p. 776).  A CT scan of Plaintiff's abdomen and pelvis conducted in connection with Plaintiff's EGD revealed a 4.3 centimeter cyst on her right ovary

and mild diffuse fatty infiltration of the liver, which the ALJ also did not discuss in connection with Plaintiff's abdominal symptoms. While a "deficiency in opinion-writing is not a sufficient reason to set aside an ALJ's finding where the deficiency [has] no practical effect on the outcome of the case," inaccuracies, incomplete analyses, and unresolved conflicts of evidence can serve as a basis for remand. *Reeder v. Apfel*, 214 F.3d 984, 988 (8th Cir. 2000); *Boyd v. Sullivan*, 960 F.2d 733, 736 (8th Cir. 1992).

The record contains the opinions of multiple consultative examiners, but the ALJ did not discuss the weight given to their opinions. The ALJ's analysis of the consultative examiners opinions essentially amounts to a simple, and sometimes partial, recitation of their content. For example, the ALJ summarized the opinion of Dr. Cathy Word as follows:

> Dr. Cathy Word performed a psychological consultative examination on August 6, 2010. [Plaintiff] reported complaints of anxiety and depression, history of abusive relationships, and no history of psychiatric treatment or use of psychotropic medications. She stated that she could maintain her own personal hygiene, prepare meals and care for two minor daughters. Dr. Word diagnosed [Plaintiff] with major depressive disorder - single episode, moderate, and posttraumatic stress disorder related to domestic violence. She assigned a Global Assessment of Functioning ("GAF") score of 45-55. Dr. Word opined that [Plaintiff] displayed moderate interference with functioning and impaired concentration. She stated that [Plaintiff] might have difficulty with cognitive demands of work, and have difficulty completing tasks in acceptable timeframe.

(ECF No. 15, pp. 780-81) (internal citation omitted). Dr. Word's opinion also contained information that Plaintiff "writes a list and sends her daughter to the store because of her avoidance activities," and "no longer socializes and has stopped going to church" and "can prepare simple meals but mostly depends on her sister or daughter to prepare them,"despite the ALJ's reliance on other descriptions of Plaintiff's ADLs as one part of finding Plaintiff's subjective complaints less than credible. (ECF No. 15, pp 548, 783). Dr. Word also opined: "[Plaintiff] will likely have anger

9

outbursts if stressors are too great which would impair her ability to work will with others." (ECF No. 15, pp. 549).  The ALJ's consideration of Dr. Word's opinion, however, does not indicate the weight given to the examiner's opinion in whole or in part; and while the ALJ's RFC determination did limit Plaintiff to unskilled work with occasional contact with the general public, the RFC does not contain any limitation with regard to Plaintiff's expected interaction with supervisors and co-workers.  (ECF No. 15, pp. 777-78).  The ALJ's failure to analyze this issue is particularly troubling considering Plaintiff's testimony at her second administrative hearing on January 18, 2012.  Plaintiff testified as follows:

| | |
|---|---|
| ALJ: | All right. Well, where did you go to work in August of last year? |
| Plaintiff: | Yea.  I worked there for, like, three weeks, I think. |
| ALJ: | Okay. |
| Plaintiff: | And then I went to the bakery.  And I worked there for two weeks. |
| ALJ: | Uh-huh. |
| Plaintiff: | But it – the Columbia Sewing, I, I was term [phonetic] for attitude. |
| ALJ: | Yeah. |
| Plaintiff: | And then at Government – I mean, at the bakery, I was term because I, I walked off the, the line to go choke a girl because she – |
| ALJ: | Right |
| Plaintiff: | – because she was picking on me. |

(ECF No. 15, p. 87).  Plaintiff also indicated she was unable to find anyone willing to help her attend her hearing that day and had hitchhiked from Hope, Arkansas to a truck stop in Mandeville, Arkansas where she was able to find someone to give her a ride to the hearing office.  *Id.* at 88.  Without knowing the weight assigned to Dr. Word's opinion and without analysis of the evidence in the record which indicated Plaintiff suffered behavioral problems at work, we cannot say the ALJ based his RFC determination on the evidence in the record as a whole.

The ALJ also failed to discuss the weight given in whole or in part to the opinion of Dr. Julia Wood, another consultative examiner.  (ECF No. 15, pp. 781).  The ALJ noted that Dr. Wood's

opinion was that Plaintiff's "ability to relate to others including supervisors and coworkers" was "moderately to markedly impaired." (ECF No. 15, pp. 583-84, 781-82). Dr. Wood wrote in her opinion:

> [Plaintiff] was unable to interact appropriately and displayed poor social skills. She was generally hostile throughout and presented as quite entitled. For example, she called early in the day and told me (did not ask) that she would be coming early so I would need to see her early. When I told her that was not necessarily going to happen but she was welcome to come early and I would squeeze her in if possible, she hung up and showed up at her appointment time.

(ECF No. 15, p. 781). Again, the RFC does not contain any limitation with regard to Plaintiff's expected interaction with supervisors and co-workers, and without knowing the weight assigned to Dr. Wood's opinion, we cannot say the ALJ based his RFC determination on the evidence in the record as a whole.

The ALJ also recited the findings of Dr. David Grant, but again failed to discuss the weight given in whole or in part to his opinion. (ECF No. 15, pp. 781). The ALJ noted Dr. Grant's suspicion that Plaintiff was malingering during her consultative examination as one reason for determining Plaintiff's subjective complaints were less than credible. (ECF No. 15, p. 783). The ALJ summarized Dr. Grant's findings, in part, by stating, "He opined that [Plaintiff] was able to effectively cope with mental/cognitive demands of basic work-like tasks, displayed adequate concentration and persistence, and was able to complete tasks in acceptable time frame." (ECF No. 15, p. 781). The ALJ, however, did not note that Dr. Grant's opinion with regard to Plaintiff's ability to cope with the mental and cognitive demands of basic work-like tasks and to concentrate and persist on those tasks, conflicted with the opinions of Dr. Word and Dr. Wood. The ALJ never discussed the weight given to Dr. Grant's opinion, and never resolved its conflict with the other consultative examiners opinions in the record, despite evidence the ALJ relied on Dr. Grant's

opinion at least in part.

I also find the ALJ's dismissal of the third-party non-medical opinion evidence in the record troubling.  The Social Security regulations specifically permit the ALJ to consider evidence from "other sources" which would not be considered an "acceptable medical source" for purposes of establishing the existence of a medically determinable impairment.  20 C.F.R. §§ 404.1513(d), 416.913(d).  Information from non-medical sources such as friends and family members "may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function."  Social Security Ruling (SSR) 06-03p (Aug. 9, 2006).  The ALJ dismissed the affidavit of Plaintiff's former spouse, Jerry Rollins, because it "provides little indication or evidence of any work related limitations."  The ALJ, however, recognized Plaintiff's affidavit evinced Plaintiff's suffering from mood swings, seizures, and blackouts.  (ECF No. 15, p. 783).  While Mr. Rollins' affidavit is short in length and broad in its content, its content is relevant to Plaintiff's severe impairments, work related limitations, and the ALJ's RFC determination.  Similarly, the ALJ "acknowledge[d] Ms. [Christina] Casas' affidavit, but note[d] the limited duration of their relationship, which begun well after the alleged onset date."  While, the ALJ "acknowledged" the opinion, his dismissal based on the date Plaintiff and Ms. Casas became friends is not a good reason, and leaves this Court unconvinced the ALJ considered Ms. Casas' opinion.  Although Ms. Casas' opinion stated their friendship began after Plaintiff's alleged onset date, the date their friendship began remains solidly within the relevant period for which an award of benefits could be granted.  (ECF No. 15, p. 1414).

We have long held that "it is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians."  *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001).  While a "deficiency in opinion-writing is not a sufficient reason to set aside an ALJ's finding

where the deficiency [has] no practical effect on the outcome of the case," inaccuracies, incomplete analyses, and unresolved conflicts of evidence can serve as a basis for remand. *Reeder v. Apfel*, 214 F.3d 984, 988 (8th Cir. 2000); *Boyd v. Sullivan*, 960 F.2d 733, 736 (8th Cir. 1992). In the present case, I find the inaccuracies, incomplete analyses, and unresolved conflicts of evidence, had a practical effect on the outcome of the case.  Accordingly, because the ALJ failed to resolve conflicts among the various physicians' opinions, failed to provide good reasons for dismissing the non-medical opinion evidence, and failed to identify the existence of objective medical evidence in the record, especially as it related to a treating physician's opinion and the ALJ's ultimate RFC determination, this case must be reversed and remanded.

**4.      Conclusion:**

Based on the foregoing, the undersigned finds that the decision of the ALJ, denying benefits to Plaintiff, is not supported by substantial evidence and should be reversed and remanded.[3]  A judgment incorporating these findings will be entered pursuant to Federal Rules of Civil Procedure 52 and 58.

**ENTERED this 21st day of February 2017.**

/s/  Barry A. Bryant
HON. BARRY A. BRYANT
U. S. MAGISTRATE JUDGE

---

[3] This remand is ordered solely for the purpose of permitting the ALJ the opportunity to comply with the requirements that he evaluate all of the evidence in the record, explain the weight given to the opinion evidence in the record, and resolve the conflicts between same.  No part of this remand should be interpreted as an instruction that disability benefits be awarded. Upon remand, the ALJ should further evaluate the evidence and make a disability determination, subject to this Court's later review.